UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MITCHELL BRIAN HUFFMAN,<br><br>Defendant. | Civil Action No.: 3:12-cv-00072-GCM |

## CONSENT ORDER OF PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST MITCHELL BRIAN HUFFMAN

### I. INTRODUCTION

On February 7, 2012, the U. S. Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint in this civil action against Defendant Mitchell Brian Huffman ("Huffman" or "Defendant"). The Complaint seeks injunctive and other legal and equitable relief for violations of Sections 4b(a)(2)(i)-(iii) of the Commodity Exchange Act ("CEA" or "the Act"), 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006) (with respect to conduct before June 18, 2008), Sections 4b(a)(1)(A)-(C), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010 ("WSTAA")), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C)(with respect to conduct occurring on or after June 18,

2008). The Complaint further alleges the Defendant violated Sections 4m(1) and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m(1) and 6o(1)(A) and (B) (2006).

## II. CONSENTS AND AGREEMENTS

To effect settlement of the all charges alleged in the Complaint against Defendant Mitchell Brian Huffman without a trial on the merits or any further judicial proceedings, Defendant Mitchell Brian Huffman:

1. Consents to the entry of this Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Mitchell Brian Huffman (hereinafter "Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges proper service of the summons and Complaint;

4. Admits the jurisdiction of the Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e);

7. Waives:

    (a) any and all claims that he may possess under the Equal Access to Justice Act,

5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 148.1 *et seq.* (2011), relating to, or arising from, this action;

(b) any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-68 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) any and all rights of appeal from this action;

8.  Consents to the continued jurisdiction of this Court over him for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future reside(s) outside the jurisdiction of this Court;

9.  Agrees that he will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his control shall take any action or make any public statement denying, directly or indirectly, any allegation in the

3

Complaint or the Findings of Fact or Conclusions of Law contained in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendant shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. Admits the allegations of the Complaint and the Findings of Fact and Conclusions of Law contained in this Consent Order. Further, Defendant agrees and intends that the allegations of the Complaint and all of the Findings of Fact and Conclusions of Law made by this Court and contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against the Defendant; (b) any proceeding pursuant to Section 8a of the Act, as amended, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2011); and/or (c) any proceeding to enforce the terms of this Consent Order.

12. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph fifty-nine (59) of Part VI of this Consent Order, of any bankruptcy filed by, on behalf of, or against him, whether inside or outside the United States, and

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against the Defendant in any other proceeding.

4

14. Defendant consents to pay restitution, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the Commission and/or hearing before this Court.

15. Defendant consents to pay disgorgement, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the Commission and/or hearing before this Court.

16. Defendant consents to pay a civil monetary penalty, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the Commission and/or hearing before this Court.

## III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and equitable relief, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.   Findings of Fact**

**1.   The Parties To This Consent Order**

17. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended, 7 U.S.C. §§ 1 et seq., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2011).

18. Defendant Mitchell Brian Huffman resides in Charlotte, North Carolina. In August, 2011, Huffman pled guilty to one count of commodities fraud, in violation of 18 U.S.C.§

5

1348, in *U.S. v. Mitchell Brian Huffman*, Case No.: 3:11-cr-246-RJC, filed in the U.S. District Court for the Western District of North Carolina.

19. Defendant Mitchell Brian Huffman has never been registered with the Commission in any capacity.

## 2. Statutory and Regulatory Background

20. Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1) (2011), defines a pool as "any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests."

21. Commission Regulation 1.3(yy)(1), 17 C.F.R. § 1.3(yy)(1) (2011), defines the term "commodity interest" as any contract for the purchase or sale of a commodity for future delivery.

22. Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), defines a CPO in relevant part as "any person engaged in the business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility. . . ."

23. Section 4m of the Act, 7 U.S.C. § 6m (2006), prohibits anyone acting as a CPO from making use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO unless registered with the Commission in such capacity.

24. Section 4o(1)(A) of the Act, 7 U.S.C. § 6o(1)(A) (2006), prohibits any CPO from employing any device, scheme, or artifice to defraud any client or participant or prospective

6

client or participant. Section 4o(1)(B) of the Act, 7 U.S.C. §§ 6o(1)(B) (2006), prohibits any CPO from engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

25. It is a violation of the Act for any person, in or in connection with any order to make, or the making of, any on-exchange futures contract, for or on behalf of any other person: (i) to cheat or defraud or attempt to cheat or defraud such other person; or (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act or agency performed with respect to such order or contract for such person. Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006) (with respect to conduct before June 18, 2008); and Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C) (with respect to conduct on or after June 18, 2008).

### 3. The Fraudulent Scheme

26. From at least August 2006 to March 11, 2011 (the "relevant period"), Defendant solicited prospective and actual pool participants, mainly family and friends, via in-person and direct telephone solicitations, to allow him to buy and sell exchange-traded commodity futures contracts on their behalf. During the relevant period, Huffman accepted at least $3.2 million from approximately 30 participants throughout the United States.

27. Huffman entered into "sponsorship agreements" with pool participants wherein Huffman represented that he would pool participants' funds to trade commodity futures contracts on their behalf. Huffman represented to participants that he utilized a "proprietary trading program" that generated "profits" of 100% to 150% per year. Huffman claimed to retain 20% of

7

all profits purportedly made from the "proprietary trading program." All of these representations by Huffman were false.

28. Defendant maintained a personal bank account at Bank of America, N.A., into which he directed participants to transfer their funds. Huffman then pooled participants' funds in his personal bank account, from which participants' funds were transferred into personal trading accounts he maintained at futures commission merchants ("FCM") TradeStation Securities, Inc., R. J. O'Brian Associates, LLC, and Gain Capital Group, LLC (collectively the "personal trading accounts).

29. All transfers of participants' funds from Huffman's personal bank account into these personal trading accounts were effected by Huffman via interstate wire transfers.

30. Huffman utilized the Internet and U.S. mail to transmit monthly account statements to participants.

31. Huffman represented to participants in these monthly account statements that he consistently generated "profits" from his commodity futures trading activity. All of the representations of profits were false.

32. Specifically, of the $3.2 million Huffman fraudulently obtained from participants, Huffman traded only approximately $1.7 million to effect trades in his personal commodity accounts. Huffman suffered massive losses in these accounts, and by the end of his fraudulent scheme, only $57,000 of participant funds remained.

33. Huffman concealed losses from participants by providing false monthly statements which reflected profits from purportedly successful trading activity and paying participants purported "profits" totaling at least $834,160. All of these payments to participants came from other participants' funds.

8

34. Unknown to participants, Huffman misappropriated participants' funds for a variety of personal uses, including but not limited to: (1) purchasing multiple motor vehicles for his person use, including two Land Rovers and a Smart Car; (2) at least $71,255 on purchases related to Huffman's classic car collection; (3) approximately $188,583 on personal travel and luxury vacations, including Disney cruises and first class airfare to Hawaii and Las Vegas, Nevada; and (4) approximately $51,540 in charitable contributions in Huffman's name.

35. The trip to Hawaii was a twenty-fifth wedding anniversary celebration for Huffman. Huffman brought along several pool participants on the trip to Hawaii, purportedly at his own expense. These participants were completely unaware that their funds were being used by Huffman to pay for the luxury vacation.

36. When Huffman could no longer sustain his fraudulent scheme, he admitted to special agents of the Charlotte, North Carolina office of the Federal Bureau of Investigation the fraudulent scheme described above and his participation therein.

37. Huffman acted as a CPO because during the relevant period he engaged in a business that was of the nature of an investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted or received from participants, funds, securities, or property for the purpose of trading in commodities for futures delivery on or subject to the rules of a contract market or derivatives execution facility.

**B. Conclusions of Law**

    **a. Jurisdiction and Venue**

38. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of

9

any provision of the Act or any rule, regulation, order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

39. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e), because the Defendant(s) reside(s) in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**b.     Fraud in Connection with Exchange-Traded Futures Contracts**

40. During the relevant period, Huffman made material misrepresentations and/or omissions to participants and/or prospective participants, all in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008, including but not limited to:

i.     Misrepresenting the profitability of the pool;

ii.    Misrepresenting that all customer funds were used to effect transactions in commodity futures contracts for the benefit of customers;

iii.   Failing to disclose to participants that he was misappropriating participant funds for his personal use and enjoyment; and,

iv.    Failing to advise actual and prospective pool participants that he was not registered as a CPO as required by the Act and was operating the pool without the required CPO registration.

41. During the relevant period, Huffman issued false statements to participants and/or prospective participants, all in violation of Section 4b(a)(2)(ii) of the Act, 7 U.S.C. §§ 6b(a)(2)(ii)(2006), with respect to acts occurring before June 18, 2008, and Section 4b(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(B), with respect to acts occurring on or after June 18, 2008.

### c. Fraud by a Commodity Pool Operator

42. Huffman, while acting as a CPO, violated Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006), in that he employed devices, schemes or artifices by use of the mails or other means or instrumentalities of interstate commerce to defraud pool participants or prospective pool participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon pool participants or prospective pool participants. In particular, Huffman, made or caused to be made to participants and prospective participants misrepresentations and/or omissions of material fact, and false reports or statements, all in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006), including but not limited to:

i. Misrepresenting the profitability of the pool;

ii. Misrepresenting that all customer funds were used to effect transaction in commodity futures contracts for the benefit of customer;

iii. Failing to disclose to participants that he was misappropriating participant funds for his personal use and enjoyment;

iv. Issuing false account statements to participants; and,

11

v. Failing to disclose to actual and prospective pool participants that he was not registered as a CPO as required by the Act and was operating the pool without the required CPO registration.

### d. Acting as a Commodity Pool Operator without Registration

43. During the relevant period, in or in connection with his business as a CPO, Huffman made use of the mails or a means or instrumentality of interstate commerce but was not registered as a CPO under the Act or entitled to a valid exemption from the requirement to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

44. Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

45. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, Huffman is permanently restrained, enjoined and prohibited from directly or indirectly:

a. Cheating or defrauding or attempting to cheat or defraud other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery, that is made, or to be made, on or subject to the rules of a designated contract market for or on behalf of any other person, in violation of Section 4b(a)(1)(A) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A); and/or

b. Willfully making or causing to be made to other persons any false report or statement or willfully entering or causing to be entered for other persons any false record, in or

12

Case 3:12-cv-00072-GCM   Document 5   Filed 05/10/12   Page 12 of 20

in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery, that is made, or to be made, on or subject to the rules of a designated contract market for or on behalf of any other person, in violation of Section 4b(a)(1)(B) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(B); and/or

c. Willfully deceiving or attempting to deceive other persons by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such persons in violation of Section 4b(a)(1)(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(C); and/or

d. Employing devices, schemes or artifices by use of the mails or other means or instrumentalities of interstate commerce to defraud pool participants or prospective pool participants, or engaging in transactions, practices or a course of business which operate as a fraud or deceit upon pool participants or prospective pool participants, including without limitation by misrepresentations and/or omissions of material fact, and/or false reports or statements, in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B); and/or

e. Making use of the mails or a means or instrumentality of interstate commerce, while not registered as a CPO under the Act or entitled to a valid exemption from the requirement to register as a CPO, in violation of Section 4m(1) of the Act, as amended, 7 U.S.C. § 6m(1) (2006).

46. The Defendant is also permanently restrained, enjoined, and prohibited from directly or indirectly:

13

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a);

b. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2011) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for his own personal account in which he has a direct or indirect interest;

c. Having any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) registered, exempted from registration or

required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

## V. RESTITUTION, DISGORGEMENT, AND CIVIL MONETARY PENALTY

47. Defendant shall pay restitution, plus pre-judgment and post-judgment interest, to all persons who gave funds, either directly or indirectly, to Defendant as a result of the course of illegal conduct alleged in the Complaint.

48. Defendant shall pay a civil monetary penalty ("CMP"), plus post-judgment interest, to the Commission as a result of the course of illegal conduct alleged in the Complaint..

49.. Defendant shall pay disgorgement, plus pre-judgment and post-judgment interest, to the Commission as a result of the course of illegal conduct alleged in the Complaint. The disgorgement amount is to be determined at a later date by agreement between the Commission and the Defendant, no later than one hundred twenty (120) days after the date of this Consent Order, or as soon as possible thereafter by the Court after an evidentiary hearing.

50. The CMP amount is to be determined at a later date by agreement between the Commission and the Defendant, no later than one hundred twenty (120) days after the date of this Consent Order, or as soon as possible thereafter by the Court after an evidentiary hearing

51. The Court shall determine the amounts of restitution, disgorgement and CMP and the procedures for payment and distribution of these monetary sanctions by further order upon motion of the parties submitting to the Court, no later than one hundred twenty (120) days after the date of this Consent Order, a proposed consent order setting out their agreement on the amounts of restitution, disgorgement and CMP to be paid by in this matter, or as soon as possible thereafter by the Court by subsequent motion of the Commission and/or after an evidentiary hearing.

15

52. In connection with any Commission motion for restitution, disgorgement and/or CMP, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal laws as alleged in the Complaint; (b) Defendant may not challenge the validity of his consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for restitution, disgorgement and/or CMP, the parties may take discovery, including discovery from appropriate non-parties.

53. Defendant shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action. As part of such cooperation, Defendant shall comply, to the full extent of his abilities, promptly and truthfully with any inquiries or requests for information including but not limited to, requests for production of documents and authentication of documents, shall provide assistance at any trial, proceeding, or investigation related to the subject matter of this action, including but not limited to, requests for testimony, depositions, and/or interviews. Should the Commission file any additional action(s) related to the subject matter of this action, Defendant directed to appear in the judicial district in which such action(s) is pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should such testimony be necessary.

## VI. MISCELLANEOUS PROVISIONS

54. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission/CFTC:

Director, Division of Enforcement
Commodity Futures Trading Commission,
Three Lafayette Centre, 1155 21st Street, NW,
Washington, D.C. 20581

Notice to Defendant Mitchell Brian Huffman:

Steven T. Meier
Meier Law
1401 East Seventh St., Suite 200
Charlotte, NC 28204
704.333.3456
Fax: 704.376.9330
steve@meierlawnc.com

All such notices to the Commission/CFTC shall reference the name and docket number of this action.

55. Change of Address/Phone: Until such time as Defendant satisfies in full his Restitution Obligation, Disgorgement Obligation, and CMP Obligation as determined by further order of this Court, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

56. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

17

57. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

58. Waiver: The failure of any party to this Consent Order or of any Participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or Participant at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

59. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and CMP, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action.

60. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under his/her/their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

61. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall

18

become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

62. Defendant understand(s) that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Mitchell Brian Huffman.*

IT IS SO ORDERED on this 10th day of MAY, 2012.

*Graham C. Mullen*
UNITED STATES DISTRICT JUDGE

19

CONSENTED TO AND APPROVED BY:

_____
Mitchell Brian Huffman

Date: 5/8/12 , 2012


_____
Steven T. Meier
Meier Law
1401 East Seventh St., Suite 200
Charlotte, NC 28204
704.333.3456
Fax: 704.376.9330
steve@meierlawnc.com
Attorney for Mitchell Brian Huffman

Date: 5/8/12 , 2012


_____
Timothy J. Mulreany
Chief Trial Attorney
U.S. Commodity Futures Trading Commission
Division of Enforcement
Commodity Futures Trading Commission,
Three Lafayette Centre, 1155 21st Street, NW,
Washington, D.C. 20581
(202) 418-5306
(202) 418-5124
tmulreany@cftc.gov

Date: 05/09 , 2012

20